**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

-----------------------------------------------x

George G. Korkala,

           Plaintiff,

- against -

Allpro Imaging, Inc.

Televere Systems, Inc.
D/b/a TigerView

           Defendants.

-----------------------------------------------x

Index No. 08-2712 (DMC)

Civil Action

**COMPLAINT**

Jury Trial Demanded

Plaintiff, George G. Korkala, for his complaint alleges:

### JURISDICTION AND VENUE

This action is instituted under the antitrust laws of the United States, particularly Sections 1 and 2 of the Sherman Act (15 U.S.C. §1, §2,§7), Section 2 of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. §13) and Sections 3 and 7 of the Clayton Act (15 U.S.C. §14 and §18) to recover treble the damages sustained by plaintiff as a direct result of his being personally injured in his business and property by reasons of Defendant's violations, as here-in-after alleged, of said antitrust laws and for injunctive relief against further loss or damage by Defendant's said violation to recover the cost of this legal action.

Defendant's have been and are currently engaged in interstate commerce and commerce within the meaning of the Sherman and Clayton Acts. This Court has jurisdiction of the action under Sections 4, 12 and 16 of the Clayton Act (15 U.S.C. §15, 22 and 26) and 28 U.S.C. §1337.

Jurisdiction is claimed under 28 U.S.C. 1332 Diversity of Citizenship and as a Federal matter which can only be adjudicated in a U.S. District Court.

At all time relevant to this complaint, Defendant's have been, and are doing and transacting business within the State of New Jersey and are otherwise in this districts venue and this judicial district is proper by virtue of (15 U.S.C. §15, 22 and 28 U.S.C. §1391(b).

## THE PLAINTIFF

Plaintiff, George G. Korkala, herein is, and at all relevant times were and is, a citizen of the State of New Jersey, with residence located at 19 Calico Lane, Nutley, NJ 07110. Plaintiff has engaged in business regularly since 1980 under the name of Security Defense Systems Corporation and Kodex, Inc. located at 160 Park Avenue, Nutley, NJ 07110. A company engaged in the sale of security and nondestructive testing (quality control) x-ray imaging systems.

## DEFENDANT'S

Defendant's, Allpro Imaging, with its place of business located at 1295 Walt Whitman Road, Melville, NY 11747-3062 and at all relevant times was and is engaged in the manufacture and sale of computed radiographic (CR) x-ray scanners for the medical, podiatry, veterinary, nondestructive testing (NDT) and explosive ordnance disposal (EOD) markets.

Defendants, Televere Systems, DBA TigerView with its principal place of business located at 16275 S. Monterey Road – Ste. K, Morgan Hill, CA 95037-5466. A company engaged in the production of computer software under the name "TigerView", for use with computed radiographic (CR) scanners manufactured by Defendant's, Allpro, Inc. for the medical, podiatry, veterinary, nondestructive testing (NDT) and explosive ordnance disposal (EOD) markets. Said systems were and are marketed throughout the United States and North America by the Defendant's dealers.

## TRADE AND COMMERCE

X-ray imaging systems and their ancillary byproducts constitute a distinct line of commerce.

The relevant geographic market is the United States of America and Defendant's products are marketed under the Scanx and TigerView trade names. All of the systems manufactured by Defendant's are sold and distributed throughout the United States by the Defendant's directly or through authorized independent dealer/distributors (herein dealers) who are appointed by Defendant's to market their Scanx line of Computed Radiographic, herein (CR) products. These dealers are assigned territories or States to sell the products as manufactured by Defendant's to end users located in their assigned national geographic market. Sales are accomplished by and through the dealer's sales knowledge and efforts. Successful sales are often the result of long and expensive introduction and test evaluations, national publication advertisements, low bid tabulations from competitive bidding and an exchange of nationwide published price lists. This single, nationwide market is cemented by regular trade shows and technical conferences, committees, etc., where manufacturers such as Defendant's and dealers exhibit their

products and exchange relevant market and product information. Shipment of the Defendant's products is from the Defendant's place of manufacture in the State of New York or the State of Wisconsin to the dealer or end user through interstate commerce.

## RELEVENT BACKGROUND

In the year 2005 Plaintiff's companies Security Defense Systems Corporation and Kodex, Inc. entered into a marketing agreement with Defendant's company, Allpro Imaging (herein Allpro) as a representative of their product line of computed radiographic (CR) scanners and with Televere Systems for its line of TigerView software.

Early in the relationship plaintiff encouraged Defendant's Allpro, Inc. and Televere Systems to expand its (CR) product line into the industrial nondestructive testing and explosive ordnance disposal, herein NDT and EOD, market for the x-ray imaging of various industrial manufactured products and for military and civilian law enforcement for the detection and identification of possible explosive devices. Defendant's had not been in this market previously. Defendant's suggested that plaintiff begin to conduct market research and to compile data that would be beneficial to Defendant's in support of expanding their (CR) product line.

Since the first meeting until the present Plaintiff provided Defendant's with a considerable amount of technical and market data as well as well as purchasing a demonstration Scanx-12 CR Scanner and obtaining sales of Defendant's scanners. Plaintiff also worked with Defendant's technical staff in order to address these new markets and to make on-site demonstrations at Plaintiff's customers to further understand the needs of these markets and to assist Defendant's in the technical demands placed on these potential customers by their vendors and in complying with numerous x-ray quality control standards. Defendant's also introduced Defendant's into the American Society of Nondestructive Testing (ASNT) and provided valuable technical information concerning the introduction of a new Computed Radiographic (CR) Standard being written by the American Society for Testing and Materials or ASTM. Defendant's later joined the responsible committee for developing the CR standard.

In addition to initially purchasing a demonstration Scanx-14, Image Storage Plates, Plate Protectors, and related required ancillary items from Defendant Allpro Imaging, Plaintiff also purchased a mobile demonstration system, including notebook computer and High Definition LCD monitor exclusively for customer demonstrations of Defendant's products.

In this early period Defendant Allpro Inc. introduced Plaintiff to the manufacture of their software, Televere Systems, under the auspices of the owner Randy Quaal, so that Plaintiff could assist Televere in developing its TigerView software for use in the NDT and EOD markets. Numerous meeting were held at Plaintiff's offices with Randy Quaal and other Televere employees where tests were conducted and specific discussion were held to promote the development of this software for Plaintiff.

Plaintiff also arranged joint site visits for Televere and Allpro employees to run tests on the Scanx CR scanner and the TigerView software. Plaintiff also purchased copies of the newly developed software for sales Plaintiff had made and it was installed on Plaintiff's demonstration Scanx-12 CR system for the purpose of demonstrating to Plaintiff's prospective customers. Plaintiff also sent its technical staff to Allpro, Inc. for training on its line of CR scanners.

Plaintiff also attended trade shows with Defendant's in an effort to further promote the Scanx CR systems and related software.

The Scanx line of scanners would not function correctly in the NDT and EOD market without the inclusion of Defendant Televere Systems TigerView software, such that a copy of the TigerView software was a required "critical component" part of the Scanx CR systems and could not be sold with out the inclusion of the TigerView software.

Defendant, Allpro Imaging did provide image acquisition software with its Scanx scanners however it was useless to the EOD and NDT market as it would only enable the end user to acquire an image.

Defendant, Allpro Imaging also produces CR scanners for the podiatry, medical, veterinary and dental markets where it provides its own brand of Visex™ image acquisition and processing software. In addition, defendant Allpro Imaging sells as its own software TigerView for its medical market. Both Visex™ and TigerView are offered in Defendant, Allpro Imaging's published price list.

Defendant, Allpro Imaging also licenses software provided by EponaTech, Inc. of Creston, CA under the trade name Metron-Pro for use with Defendant's Scanx scanners in the Equine veterinary market.

## ALLEGATIONS

### FIRST COUNT

1. Beginning in approximately late 2007 and continuously thereafter to and including the date of this complaint, Defendant's acting under an implied and actual contract has engaged in an unlawful combination of conspiracy and unreasonable restraint of interstate trade in commerce in the sale of their Scanx line of computed radiographic (CR) x-ray scanners and TigerView software in violation of Sections 1 and of the Sherman Act (15 U.S.C. §1) and Section 2 of the Robinson-Patman Act (15 U.S.C. §13)

2. Defendant's did conspire to put into effect a plan to utilize Plaintiff's extensive knowledge of the (NDT and EOD) markets, existing products and pricing on competitive products, while misleading plaintiff into believing Defendant's intentions were ethical and sincere.

3. Defendant's discriminated against plaintiff in violation of Section 2 of the Robinson-Patman Act 915 U.S.C. §13)

4. Said unlawful combination and conspiracy is continuing and will continue unless the relief herein requested is granted.

## SECOND COUNT

### DEFENDANT'S CAPRICIOUSLY AND WITHOUT CAUSE CONSIPIRED TO PREVENT PLAINTIFF FROM ENGAGING IN SALES OF DEFENDANT'S PRODUCTS

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the First Count as if set forth herein at length.

2. Plaintiff had what was believed to be a relationship of mutual trust with Defendant's for years, engaging in the promotion, sale and customer support of Defendant's products.

3. Plaintiff and Defendant's had previously enjoyed a long standing meaningful and respectful business relationship wherein plaintiff consistently provided Defendant's with proprietary NDT and EOD as well as then current industry marketing knowledge.

4. At no time has Defendant's found cause to complain or in any manner indicate less then a good relationship existed between both parties.

5. That Defendant's acted in bad faith, breaching an actual and implied contract, acquiring knowledge from plaintiff that was not easily available from any other source and with full intent in taking advantage, without just compensation.

6. That Defendant's had not previously engaged in or represented to be engaged in the manufacturing or marketing of (CR) x-ray systems to the NDT and EOD markets.

7. That Defendant's then signed on other dealers for these markets that in all cases were and are competitors to Plaintiff.

8. That Defendant's listed these dealers, including Plaintiff on its Web Site.

9. That upon information and belief, Defendant Allpro, Inc. contracted with Randy Quaal of Televere Systems to act as a manufacturers representative where he was compensated by a percentage of sales to Defendant's dealers.

10. Randy Quaal's responsibility was to assist Defendant's dealers in the sales of Defendant's products by way of meeting, trade shows, providing sales leads and in assisting in attending demonstrations arranged by dealers.

11. Defendant Allpro Inc. then made Televere Systems an Allpro dealer in addition to Televere Systems role as an Allpro factory representative, a distinct conflict of interest.

12. In addition Televere Systems then raised the price of its TigerView EOD software to Plaintiff from an agreed price of $2500.00 to $3950.00 per copy and the NDT software to $7950.00 thus preventing Plaintiff from being able compete with Televere Systems.

13. As a result of Defendant's actions plaintiff was severely injured, in that plaintiff could no longer obtain the very NDT and EOD x-ray systems that plaintiff helped create and that were and are so critical to plaintiff's ability to earn a livelihood.

## THIRD COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 12 of the Second Count as if set forth herein at length.

2. That upon information and belief Defendant's as a corporation and individually as officers of the corporation did conspire to deceive and systematically glean as much information from plaintiff as possible while knowingly intending to eventually eliminate Plaintiff from the EOD and NDT scanner market.

3. That Defendant's then provided all sales leads to only one of its dealers, Televere Systems.

4. That Televere Systems obtained sales in excess of $1,300,000 as a result of the sales leads that were provided by Defendant Allpro, Inc, while Plaintiff and Defendant's other dealers were not provided those same leads to afford them an opportunity to compete.

5. That Defendant's actions have caused embarrassment and substantial financial harm to plaintiff personally and to his businesses.

## FOURTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 5 of the Third Count as if set forth herein at length.

2. That by Defendant's alleged conspiratorial actions plaintiff unknowingly and with trust provided Defendant's with all of plaintiff's goodwill along with plaintiff's in-state and inter-state NDT and EOD customers and contacts, believing that Plaintiff's relationship with Defendant's would be a long and withstanding one.

3. Plaintiff further assisted Defendant's by personally taking Defendant's to meetings and arranging demonstrations with Plaintiff's customers and advising them of specific trade shows and conferences related to Plaintiff's market base.

4. Defendant's subsequently and independently contacted Plaintiff's customer base and arranged sales calls, held personal meetings, provided demonstrations and arranged for loaner NDT and EOD Scanx CR scanners for evaluation without including Plaintiff in said discussions or meetings.

5. Defendant's contrived exclusion placed plaintiff in a non-competitive position where Defendant Allpro, Inc. favored one dealer, Televere Systems over Plaintiff, thus treating one dealer different than any of their other dealers.

6. That these actions alone were cause for substantial injury to plaintiff and in violation of the afore-mentioned laws and Acts.

### FIFTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 6 of the Fourth Count as if set forth herein at length.

2. That Defendant Allpro, Inc. further provided Televere Systems with more favorable pricing in that in addition to Televere Systems being able to purchase Plaintiff's products at dealer net cost Plaintiff also paid Randy Quaal of Televere Systems an additional percentage as a factory representative on each system sold.

3. This added benefit made Plaintiff's net costs higher than that of Defendant's most favored dealer, Televere Systems.

4. This most favored pricing and Televere Systems ability to control the software price made it absolutely impossible for Plaintiff to compete in the very market it assisted Defendant's in entering.

5. That this was a systematic strategy by Defendant's to eventually have no use for Plaintiff or his company and to eliminate Plaintiff from competing in the NDT and EOD CR Scanner market.

### SIXTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 5 of the Fifth Count as if set forth herein at length.

2. Upon information and belief Defendant's did treat Plaintiff in a manner so as to exclude Plaintiff and other dealers from any opportunity in the NDT and EOD CR Scanner market.

3. That Defendant's actions isolated itself to only having to worry about eliminating Plaintiff to enable Defendant's to have total control over its sales and representation in

the lucrative NDT and EOD CR market, thus favoring one dealer over another in violation of Section 3 of the Robinson-Patman Act (15 U.S.C. §13)

4. That this in effect amounted to an anti-competition covenant, excluding both Plaintiff and Defendant's already established dealer network from the NDT and EOD Computed CR market.

## SEVENTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the Sixth Count as if set forth herein at length.

2. This was further demonstrated, when Plaintiff called attention to Plaintiff being listed on Defendant Allpro, Inc's web site as a dealer and being expected to be treated equally. That very same day Defendant Allpro, Inc. removed Plaintiff's name and all other dealers listed from it's web site, except for Televere Systems which remained and that of Primex Project Management, Ltd. a Canadian Scanx dealer.

4. That upon information and belief it was Defendant's intent to restrict trade, limit competition and to restrain Plaintiff from obtaining any sales in the NDT and EOD CR scanner market.

## EIGHTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the Seventh Count as if set forth herein at length.

2. That Defendant's contacted plaintiff and asked to borrow Plaintiff's x-ray quality control test standards (x-ray step wedges) to enable Defendant Allpro, Inc. technical department to run tests towards improving its CR scanner's image quality.

3. Continuing in the belief that Defendant's were to be trusted, Plaintiff did provide Defendant's with the requested materials and spent many hours in Plaintiff's facility with Televere Systems staff running numerous imaging tests to further improve the TigerView software for use with the Scanx CR scanners.

4. That said misguided trust further eroded Plaintiff's ability to recover from Defendant's later actions while providing Televere Systems with a distinct technical and marketing advantage over Plaintiff.

## NINTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the Eighth Count as if set forth herein at length.

2. Upon information and belief Defendant's egregious breach of trust, implied and actual contract and the norm of business ethics were the consummate result of a

conspired plan to take maximum advantage of Plaintiff with no intention of fair remuneration or compensation.

3. That Defendant's fully intended to stifle competition and prevent any independent dealer other than Televere Systems, from directly entering what they now perceived to be Defendant's exclusive market place.

4. That Defendant's actions have caused considerable irreparable harm to Plaintiff as well as that of eliminating competition by their unreasonable restraint of trade in the NDT and EOD CR market.

## TENTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the Tenth Count as if set forth herein at length.

2. Upon information and belief, in April or May 2008, Defendant Televere Systems did conspire and collude with Defendant Allpro, Inc. in an effort to prevent Plaintiff from participation in responding to a U.S. Navy (NAVSCOLEOD) FISC Jacksonville (Eglin AFB) Solicitation Nbr. N68836-08-R-0023, for a quantity of forty four (44) Scanx-12 Systems and to essentially fix the price in Defendant's favor.

3. This action by Defendant's is in direct violation of the Federal Acquisition Rules FAR, Subpart 3.3—Reports of Suspected Antitrust Violations (emphasis added). Especially, Para. 3.303 (c) 9.

4. As a result Defendant's has attempted to restrain trade by selectively eliminating all competition in a U.S. Government procurement.

## ELEVENTH COUNT

1. Plaintiff repeats the allegations of paragraphs 1 through 4 of the Tenth Count as if set forth herein at length

2. Plaintiff initiated a formal protest with FISC Jacksonville under the Federal Rules of Acquisition (FAR), Department of Defense (DOD) Directives and Office of Management and Budget (OMB) Regulations, citing the appropriated clauses that were in violation and requesting the Solicitation be canceled.

3. On 23 May 2008 FISC Jacksonville's Contracting Officer issued Amendment Nbr. 0003 canceling the Solicitation and upon notifying Plaintiff of the cancellation, indicating a new Solicitation Number N68836-08-T-0120 will be issued in the future and requested that Plaintiff withdraw his protest. Plaintiff's protest was subsequently withdrawn.

4. On 28 May 2008 Defendant, Allpro Imaging Vice President and General Manager, Richard S. Povak in retaliation against Plaintiff for filing the protest with FISC Jacksonville sent Plaintiff an email terminating Plaintiff's dealership indicating it was "without cause".

5. Upon information and belief, Defendant's then contacted the Contracting Officer at FISC Jacksonville, notifying them that Plaintiff was no longer a dealer and that the Scanx system could only be purchased from Defendants.

6. As a direct and proximate result of Defendant's intentional and wrongful breach of contract Defendant's actions have caused substantial financial irreparable injury to Plaintiff by preventing Plaintiff from participating in any contracts or sales, Federal or State Government or commercially nor earning any livelihood in this lucrative market.

## CONCLUSION

As a result of Defendant's actions Plaintiff has suffered irreparable personal loss in that Plaintiff's business has been effectively devalued such that Plaintiff, being deprived of a crucial product line and is no longer a viable player in the NDT and EOD computed radiographic (CR) scanner market.

Defendant's actions have further caused Plaintiff loss of customers and rights in his contractual obligations with customers. Plaintiff has lost and is losing personal income which he would have earned, has lost goodwill in the industry, has lost and is losing customers, has suffered serious financial and economic damage to his company, has been and is prevented from his fair share of the market or in the sale of Defendant's Scanx line of CR products and will in the future continue to suffer such loss and damage.

As a direct, proximate and intended result of Defendant's unlawful actions the industry has been deprived of the benefits of free competition in the production, pricing and sale of computed radiographic (CR) NDT and EOD x-ray products in the United States. Defendant's actions have caused fair competition to suffer injury, the effect being the substantial lessening of competition, the direct interference of free trade with respect to the end users choice of dealer or representative. That these unlawful activities will continue to cause further damage to the plaintiff unless enjoined by the Court.

**WHEREFORE,** Plaintiff demands judgment against the Defendant's herein named:

That Defendant's aforesaid actions be adjudged and decreed to be unlawful, in violation of Sections 1 and 2 of the Sherman Act;

That the Court adjudge and decree that Defendant's have discriminated in violation of Section 2 of the Clayton Act and that the effect of their practice may be, has been and is,

to substantially lessen competition in the sale of the Scanx Computed Radiographic (CR) x-ray products;

That the Court adjudge and decree that Defendant's have violated the Robinson-Patman Act (15 U.S.C. §13) such to cause substantial financial harm to plaintiff and plaintiff's business and goodwill in the amount of $3,500,000 (Three Million Five Hundred Thousand Dollars).

That judgment be entered in plaintiff's favor in an amount equal to three-fold the damages sustained by it as a result of its being injured in its person, business and property by reason of Defendant's violation of Section 1 and 2 of the Sherman Act and Sections 3 and 7 of the Clayton Act;

That Defendant's be enjoined from all further such acts;

That plaintiff recover costs of suit; And such other and further relief as this Court may deem proper.

Dated: 30 May 2008

George G. Korkala, Pro Se
19 Calico Lane
Nutley, NJ 07110
(973) 235-0606

© 2008