NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| GEORGE G. KORKALA, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : |  |
| v. | : | **OPINION** |
|  | : |  |
| ALLPRO IMAGING, INC., *et al.*, | : | Civil Action No. 08-2712 (DMC) |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

<u>DENNIS M. CAVANAUGH, U.S.D.J.</u>:

This matter comes before the Court upon motions by Defendants, Allpro Imaging, Inc., ("Allpro") and Televere Systems, Inc. d/b/a TigerView ("Televere")(collectively "Defendants") to dismiss Plaintiffs George Korkala ("Korkala"), Security Defense Systems Corporations, Kodex Inc., and X-Ray Associates East, LLC.'s ("Corporate Plaintiffs[1]")(collectively "Plaintiffs")Amended Complaint for lack of standing pursuant to Fed. R. Civ. P. 12(1),  failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a); and upon motion by Korkala to strike Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(f).  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendants' motions to dismiss are **granted**; Defendants' motion to transfer venue is **denied**; and Plaintiffs' motion to strike is **denied**.

---

[1]The Corporate Plaintiffs are not named Plaintiffs, however, Korkala asserts claims on their behalf. To simplify, the Court has incorporated Corporate Plaintiffs into the Complaint.

## I. BACKGROUND[2]

### A.  Procedural History

On November 3, 2008, Korkala filed an Amended Complaint pursuant to the antitrust laws of the United States including the Sherman Act, the Clayton Act, and the Clayton Act as amended by the Robinson-Patman Act. On December 5, 2008, Defendants filed a motion to dismiss Plaintiffs' Amended Complaint. On February 13, 2009, Korkala filed a motion to strike Defendants' motion to dismiss the Amended Complaint.

### B.  Factual Background

Since 1980, Plaintiffs have sold x-ray imaging systems for use in the "security explosive ordnance disposal" ("EOD") and "nondestructive testing" ("NDT") markets.  Plaintiffs have sold these systems to various entities that include, U.S. government agencies, U.S. military facilities, law enforcement agencies, and commercial government prime contractors.

Korkala is neither the president nor owner of the Corporate Plaintiffs.  Nonetheless, despite admitting that he is only the Vice President of Corporate Plaintiffs, Korkala asserts that he is "absolutely the primary individual in all three companies" and "totally responsible for the success or failure of these companies."  In reality, Donna L. Korkala, Korkala's wife, is President of Security Defense Systems Corporations, Pamella L. Korkala, Korkala's daughter, is President and registered agent of Kodex, Inc, and George Mclachlan is President and owner of X-Ray Associates East, LLC.

Defendant Allpro Imaging is engaged in the manufacture and sale of computed radiographic ("CR") x-ray scanners for the medical, podiatry, and veterinary markets. Defendant Televere is engaged in the production of computer software for use with CR scanners manufactured by

---

[2] The facts set forth in this Opinion are taken from the parties' respective papers.

Defendant Allpro, Inc., for the medical, podiatry, and  veterinary markets. In 2005, Defendants Allpro and Televere developed their respective products to enter the NDT and EOD markets. As a result of these efforts, the "Scanx System" is marketed as the combination of TigerView software and the Scanx line CR scanner. The Scanx System has proven to be highly useful for NDT and EOD purposes.

## II.  STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1)

The standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) depends on whether the motion is based on a facial or factual challenge to subject matter jurisdiction. See Gould Elecs. Inc. V. United States, 220 F.3d 169, 176 (3d Cir. 2000).  A facial challenge asserts that a court lacks jurisdiction over the plaintiff's claims on their face.  If the defendant's attack is facial, a court must accept as true all allegations in the complaint and draw reasonable inferences in favor of the plaintiff.  Mortensen v. Frist Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Furthermore, a court "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." Liu v. Gonzales, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007).

A factual challenge attacks the existence of a court's subject matter jurisdiction apart from any of the pleadings.  See Mortensen, 549 F.2d at 891.  When considering a factual challenge, "no presumpti[on of] truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J.1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).  "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) [factual challenge to jurisdiction] need not be limited; conflicting written and oral evidence

may be considered and a court may 'decide for itself the factual issues which determine jurisdiction."
Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) Cert. denied, 454 U.S. 897 (1981)).
"When resolving a factual challenge, the court may consult materials outside the pleadings, and the
burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d
574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)).
Nonetheless, "[w]here an attack on jurisdiction implicates the merits of a plaintiff's [F]ederal cause
of action, the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp.
at 1071 (citing Williamson, 645 F.2d at 413 n.6). Regardless of whether the challenge is facial or
factual, the plaintiff still bears the burden of persuasion. Mortensen, 549 F.2d at 891.

### B.   Fed. R. Civ. P. 12(b)(6)

　　　When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), all allegations in the
complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth
v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.,
140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion, a court may consider only
the complaint, exhibits attached to the complaint, matters of public record, and undisputedly
authentic documents, if the plaintiff's claims are based upon those documents. Pension Benefit
Guar. Corp. V. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

While under the liberal notice pleading standard a plaintiff is not required to plead facts sufficient
to prove its case, there still must be an underlying claim for relief before the court. Lum v. Bank of
America, 361 F.3d 217, 223 (3d Cir 2004). To defeat a 12(b)(6) motion, the plaintiff must provide
"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). Moreover, "a court need not credit a complaint's 'bald assertions' or 'legal

conclusions' when deciding a motion to dismiss." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

Pro se complaints are to be construed liberally.  See United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  Even a pro se complaint, however, should be dismissed if "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim" that would lead a court to conclude that the claim is plausible on its face.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (internal citation omitted).  Moreover, a court shall dismiss a complaint where in forma pauperis was granted if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such a claim.  28 U.S.C. § 1915(e)(2)(B).

## III.   DISCUSSION

### A.  Fed. R. Civ. P. 12(b)(1)

#### i.      Plaintiffs' General Claims

Korkala brings claims against Defendants for injuries suffered by Corporate Plaintiffs. These injuries are said to arise from Defendants' violation of antitrust laws that include; the Sherman Act (15 U.S.C. §1, §2, §7), the Clayton Act (15 U.S.C. §13-15, §18, §26), and the Robinson-Patman Act (15 U.S.C. §13). The Court, however, fails to reach the merits of these claims because Korkala is not a lawyer and is therefore prohibited from acting as Corporate Plaintiffs' legal representative.

It is well established that a corporation cannot proceed pro se.  Simbraw, Inc. v.  United States, 367 F.2d 373, 374 (3d Cir. 1966)(dismissing claims brought by a corporation that was represented pro se by its President); Brooks- McCollum v. State Farms Ins. Co., No. 08-2716, 2009 U.S. App. LEXIS 7543, at *3 n.1 (3d Cir. Apr. 8, 2009); See also, 28 U.S.C. § 1654 (1949).  This is true in spite of 28 U.S.C. § 1654 which states, "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein[.]" See, Simbraw, 367 F.2d at 374.  Artificial entities, such as corporations, associations and partnerships, are not a single individual, and therefore

4

are unable to represent themselves "personally". <u>Rowland v. Cal. Men's Colony</u>, 506 U.S. 194, 203 (1993). Even the sole shareholder or president of a corporation cannot seek to represent the corporation in a court of law without legal counsel. <u>Rowland</u>, 506 U.S. at 203. Therefore, while Korkala may be the Vice President of Corporate Plaintiffs, he is unable to represent the interests of Corporate Plaintiffs in a court of law. As a result, the claims brought by Korkala which truly belong to Corporate Plaintiffs are **dismissed**.

### ii.    Korkala's Individual Claims

_____Korkala seeks damages against Defendants for financial injuries he claims to have suffered personally, resulting from the alleged anti-competitive conduct of Defendants. Korkala argues that Defendants violated the Sherman Act (15 U.S.C. §1, §2, §7), the Clayton Act (15 U.S.C. §13-15, §18, §26), and the Robinson-Patman Act (15 U.S.C. §13). Korkala asserts that the injuries he has suffered are sufficient to give him standing. Specifically, Korkala asserts that as an employee of Corporate Plaintiffs, his personal income has been negatively affected.

A federal court has jurisdiction over actual cases and controversies, which is partially determined by whether a plaintiff has standing to sue. U.S. Const. Art. III, § 2; <u>see</u> <u>also</u>, <u>Summers v. Earth Island Inst.</u>, 129 S. Ct. 1124, 1149 (2009); <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 102 (1998); <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 154-55 (1990). In fact, "Article III standing goes to the very heart of a court's subject matter jurisdiction. It determines whether the court has jurisdiction to resolve a dispute on the merits." <u>In re Franklin Mut. Funds Fee Litigation</u>, 388 F. Supp. 2d 451, 460 (D.N.J. 2005). As stated in <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555 (1992), a plaintiff has standing when he or she satisfies three requirements:

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61(calling these factors the "irreducible constitutional minimum" requirements)(citations and internal quotations omitted).  In other words, "[t]he triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 103-04; see generally, Summers, 129 S. Ct. 1124, 1149 (2009)(stating that the plaintiff "bears the burden of showing that he has standing for each type of relief sought").

Korkala lacks standing for two distinct reasons; first, because the injuries complained of do not belong to him personally and second, because he has not alleged an injury- in -fact consistent with Lujan.

Korkala complains of "financial injury" because of Defendants' alleged anti-competitive conduct, however, said injuries belong to Corporate Plaintiffs and not Korkala individually.  Korkala is an employee of three incorporated companies (the Corporate Plaintiffs) that engage in the business of selling x-ray equipment.  Korkala's official involvement in these businesses is purely through his status as an employee/executive.  An employee, even if the employee is an executive of the corporation cannot stand in the shoes of that corporation to pursue legal claims belonging to the corporation.  Here, it is the Corporate Plaintiffs who allegedly suffered "financially by being prevented from participating in [] contracts or sales" as a result of Defendants' conduct.  Further, it is Corporate Plaintiffs, not Korkala who were allegedly injured because of being prevented from competing in the relevant marketplace.  Korkala simply replaces Corporate Plaintiffs' names with his own in an effort to usurp the Corporate Plaintiffs' claims.  In the context of anti-trust litigation, private litigants may have standing to bring claims as consumers, however, Korkala is not a consumer. Brooke Group v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 224 (1993).

6

Simply, Korkala attempts to couch corporate grievances as his own.  Since this is not permitted, Korkala lacks standing.

In an attempt to circumvent Defendants' anticipated challenge to Korkala acting as legal counsel for Corporate Plaintiffs, Korkala brought claims of personal financial injury.  Korkala however, has not alleged an injury- in- fact under the standard set forth in Lujan.  In order for Korkala to posses standing to pursue the claims he asserts belong to him, his injuries must be "(a) concrete and particularized and (b) actual or imminent."  The injury alleged by Korkala is both conjectural and vague.  Lujan, 504 U.S. at 560.  In Korkala's own words, he was "harmed financially by being prevented from participating in any contracts or sales" and "severely injured" when prevented from competing which he claims was and is "critical to [his] worth and ability to earn a livelihood."  From this, the Court assumes that Korkala is attempting to argue that his personal income has been negatively affected by Defendants' alleged anti-competitive conduct.  Korkala however, asserts no facts from which the Court can assess the validity of these claims.  Korkala's statements are vague and hard to understand.  Additionally, any income that Korkala may have lost is speculative at best.  Korkala has not demonstrated that Corporate Plaintiffs' product was a viable alternative to the Scanx System that would have been competitive but for Defendants' anticompetitive conduct.

Injury- in- fact "must be concrete in both a qualitative and temporal sense.  The complainant must allege an injury to himself that is distinct and palpable."  Whitmore, 495 U.S. 149, 155 (1990)(citation and quotation omitted).  The injury must not be abstract or subjective. See Id.; Laird v. Tatum, 408 U.S. 1, 13-14 (1972).  Korkala's allegations fall short of this standard. It has been established that claims that fail to specifically set forth facts sufficient to satisfy injury-in-fact, will be dismissed.  Whitmore, 495 U.S. at 155.  It follows that Korkala's recital of personal financial loss

that is vague and unsupported, does not qualify as injury-in-fact.  Therefore, Korkala's claims of personal injury are **dismissed**.

### B.  Fed. R. Civ. P. 12(b)(6)

Alternatively, Defendants argue  that the Amended Complaint should be dismissed on grounds of failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  With respect to Plaintiffs' antitrust claims, it is well settled that before permitting discovery which, can be time consuming and expensive, a court must insists that the underlying complaint have specificity and legitimacy. Twombly, 550 U.S. at 558.  "[The] pleading must contain something more ...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id.

### i.   Section 1 and 2 of the Sherman Act

Korkala asserts that Defendants violated the Sherman Act, 15 U.S.C. §1, §2. In order to bring claims under the Sherman Act, a plaintiff must at minimum identify the relevant product market in which the alleged antitrust violations took place. Queen City Pizza v. Dominos Pizza, 124 F.3d 430, 436 (3d Cir. 1997). While defining the relevant product market may be a fact sensitive inquiry that is fully developed during discovery, this does not preclude dismissal under Fed. R. Civ. P 12(b)(6), if a plaintiff's complaint is inadequate.  Id. at 436.  If a plaintiff fails to allege facts relating to substitute products or cross-elasticity of demand, even when all factual inferences are made in the plaintiff's favor, the relevant market is legally insufficient and therefore, is valid grounds for dismissal. Id. at 436; see e.g., Building Materials Corp. Of America v. Rotter, 535 F.Supp.2d 518, 524 (E.D. Pa. 2008).

The term 'relevant product market' is defined as "those commodities reasonably interchangeable by consumers for the same purposes" and may be used as substitutes.  Id.; accord, Brown Shoe Co.

v. United States, 370 U.S. 294, 325 (1962).  Differences in price, use, and quality of the product and substitutes proffered are factors taken into consideration when determining "reasonable interchangeability."  See, Queen City Pizza, 124 F.3d 430, 437; Tunis Brothers Co., Inc v. Ford Motor Co., 952 F.2d 715, 722 (3d Cir. 1991).  Here, Korkala attempts to define the relevant product market under two contradictory theories; first, that the Scanx System is a single product market and second, that the Scanx System is a product within the NDT and EOD markets.  Both of Korkala's attempts to plead relevant market are insufficient.

First, Korkala alleges that Defendant Allpro's scanner and Defendant Televere's software, together the Scanx System, have established a "single, nationwide market" in which no comparable product exists.  In Queen City Pizza, this Court rejected the assertion that a relevant market can be defined as a single product market where a combination of elements that can be acquired from other sources make a specialty product.  In Queen City Pizza, it was established that a relevant market could not be defined as comprising solely of pizza dough, tomato sauce, and paper cups approved for use by Domino's because such products are "interchangeable with dough, sauce and cups available from other suppliers[.]"  See 124 F.3d at 438.  Korkala has not set forth facts sufficient to demonstrate that the Scanx System is unique.  In fact, Korkala has inconsistently provided that Logos Imaging, LLC., FUJI NDT, Virtual Media Integrations Ltd., and GE Inspections Technologies are all companies that manufacture products  in "competition" with the Scanx System.  The existence of comparable products that compete with the Scanx System rebuts Korkala's own assertion of a single-product market.

Second, Korkala attempts to define, "the outer boundaries" of the NDT and EOD markets but fails, as he does not assert sufficient facts that support a "reasonable interchangeability of use or the

cross- elasticity of demand between" the Scanx System, and its substitutes within the NDT and EOD markets. Brown Shoe Co., 370 U.S. at 325. Korkala identifies a narrow "relevant product market" of scanners within the EOD and NDT markets but provides little explanation of the EOD and NDT markets themselves. Instead, Korkala relies on technical jargon, that when scrutinized makes little sense. Moreover, Korkala's cursory comparison of scanner prices between "competitor" products does not make clear if this includes Defendant Televere's software, or if the other scanners have similar capacity and use.

Plaintiffs' alleged facts do not suffice to plead a relevant product market. Therefore Plaintiffs' claims under the Sherman Act are **dismissed** pursuant to Fed. R. Civ. P 12(b)(6).

### ii.    Section 2 of the Clayton Act as Amended by the Robinson-Patman Act

The Robinson-Patman Act states in relevant part that:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality...where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition....

15 U.S.C. § 13 (a). Vital to a claim under the Robinson-Patman Act is the demonstration that "interbrand competition" and not merely intrabrand competition is harmed. Volvo Trucks North America, Inc. V. Reeder- Simco GMC, Inc., 546 U.S. 164, 180 (2006). Interbrand competition is the competition among manufacturers of the same generic product within the relevant market. For Plaintiffs to pursue a Robinson-Patman Act remedy, it is necessary for Plaintiffs to allege that interbrand competition within the NDT and EOD markets is harmed. Id.; Toledo Mack Sales & Service , Inc. V. Mack Trucks, 530 F.3d 204, 227 (3d Cir. 2008). In this case, Korkala argues that

the harm he has suffered constitutes harm to interbrand competition. Korkala, however, as established above, fails to plead sufficient facts to define the "outer boundaries" of the relevant market and therefore, has failed to plead harm to interbrand competition. Brown Shoe Co., 370 U.S. at 325. For this reason, Plaintiffs' Section 2 Clayton Act claim is **dismissed**.

### iii.   Section 3 and 7 of the Clayton Act

Section 7 of the Clayton Act provides, in relevant part:

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18. Similarly, Section 3 of the Clayton Act condemns sales or agreements where "the effect of such sale or contract... would under the circumstances disclosed probably lessen competition, or create an actual tendency to monopoly." Tampa Electra Co. V. Nashville Coal Co., 365 U.S. 320, 326 (1961). Korkala alleges that Defendants have a monopoly over the sale of the Scanx System that warrants redress under Sections 3 and 7. However, "[t]o support an inference of monopoly power, a plaintiff typically must plead and prove that a firm has a dominant share in a relevant market[.]" Broadcom Corp. V. Qualcomm Inc., 501 F.3d 297, 307 (3d Cir. 2007). Again, as established, Korkala has failed to plead sufficient facts to properly define the relevant market. Therefore, it is impossible to determine what share of the relevant market Defendants have. For this reason Plaintiffs fail to state a claim upon which relief can be granted and their Section 3 and 7 Clayton Act claims are **dismissed**.

**C.**      **Korkala's Motion to Strike**

Korkala moves to strike Defendants' motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(f). Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Korkala's motion to strike is inappropriate because he seeks to strike a motion to dismiss as opposed to a statement in a pleading.  Therefore, Korkala's motion is **denied**.

**IV.**      <u>CONCLUSION</u>

For the reasons stated, Defendants' motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) is **granted**; Defendants' motion to transfer venue is **denied** as moot; and Korkala's motion to strike pursuant to Fed. R. Civ. P. 12(f)is **denied**. An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
_____
Dennis M. Cavanaugh, U.S.D.J.

Date:          August 10, 2009
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File\